UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGRID TAMO, | No.  2:22-cv-1393-KJN |
| Plaintiff, | ORDER |
| v. | (ECF Nos. 17, 18.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in:  (A) discounting the opinion of plaintiff's marriage and family therapist concerning her mental impairments; and (B) assigning an inappropriate residual function capacity given the evidence and reported symptoms concerning her back impairments.  Plaintiff seeks a remand for further proceedings.  The Commissioner opposed, filed a cross–motion for summary judgment, and seeks affirmance.

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 4, 9, 11.)

1

## I. RELEVANT LAW

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

II.     **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

Plaintiff applied for Title II benefits in January 2017, alleging disability beginning July 11, 2016, due to "degenerative disc disease with radiculopathy, herniated lumbar disc, clinical depression and anxiety, sciatica, and spinal stenosis with nerve compression." (Administrative Transcript ("AT") 252, 276, 287.) Plaintiff was last insured for benefits on June 30, 2017. (AT 70, 780.) The Commissioner denied the claim initially and after reconsideration. (AT 124, 130, 138.) An ALJ held a hearing on August 29, 2018, and issued an unfavorable decision, but the Appeals Council reversed for further proceedings. (AT 44-69, 107-16, 119-20.) The ALJ held another hearing and again rejected plaintiff's claim, and the Appeals Council affirmed. (AT 16-31, 34-43.) Plaintiff challenged this decision in this court, where the parties ultimately stipulated to a remand for further proceedings. (AT 871-89.) On remand, the case was assigned to a different ALJ, who held a hearing on September 8, 2021. (AT 803-44, 894.)

On November 2, 2021 the ALJ issued a decision determining plaintiff was not disabled. (AT 779-95.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity between July 11, 2016 (her alleged onset date), and June 30, 2017 (her date last insured). (Id.) At step two, the ALJ determined plaintiff had the following severe impairments during the relevant period: degenerative disc disease of the lumbar spine, sequalae of left leg fracture and fixation in 2011, anxiety, and depression. (Id.) At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 783, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.) Regarding plaintiff's mental impairments, the ALJ considered Listings 12.04 (depression) and 12.06 (anxiety). (AT 783-84.) Under Paragraph B, the ALJ found plaintiff was mildly limited in her ability to understand, remember, or apply information; and was moderately limited in her abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Id.) The ALJ found plaintiff's impairments did not meet the requisite Paragraph C severity. (Id.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work, but with the following additional limitations:

///

> [She could] climb ramps and stairs occasionally but could not climb ladders, ropes or scaffolds[;] stoop, kneel, crouch and crawl occasionally[;] maintain balance while standing, walking, and crouching, but could not run over narrow, slippery, or erratically moving surfaces and could not perform gymnastic feats[;] could not push, pull, or operate foot controls with her left lower extremity[;] needed to avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous moving mechanical parts[;] required the ability to sit or stand[;] could sit for approximately 30 minutes at a time[;] and was anticipated to have no more than 5% of the workday off task for changing positions.
> She was able to perform simple routine tasks and make simple workplace decisions[;] was able to have occasional interaction with supervisors, co-workers, but only brief and superficial interaction with the public[; and] required a workplace with little change to the setting and routine.

(AT 786.) In crafting this RFC, the ALJ stated she considered plaintiff's symptoms alongside the medical evidence, medical opinions, and the other evidence. (Id.)

Regarding the medical opinions on plaintiff's mental impairments, the ALJ considered a 2018 statement from Dr. Badal. (AT 564-65.) The ALJ summarized this statement as follows:

> [Plaintiff] has marked difficulty in concentration and attention to details for an extended period of time. Due to chronic pain and poor sleep, she has "rather lowere (sic) than expected threshold" for stress and withstanding daily stressors. She is able to understand, remember, and carry out simple one-or-two job instructions, but "due to chronic pain and the resulting agitation and depressive episodes, she has difficulty in following through or completing tasks in meaningful way." With regard to the ability to deal with the public, "her episodes of increased pain and resulting agitation, she tends to avoid interacting with people." While she is able to receive and carry out instructions from supervisors, she "tends to over-react to issue or simple criticisms as her stress tolerance level is lower than one would expect from a person with her experience." With regard to the ability to relate and interact with co-workers, she is "able to do so but tends to over-react to issue or simple criticisms as her stress tolerance level is lower than one would expect from a person with her experience." She would miss five to six days of work each month due to pain "or the activities that she has to engage in."

(AT 790 (citations omitted).) The ALJ gave this opinion "reduced weight" because it was written 14 months after plaintiff's date of last insured and in the present tense, and was typed but not signed by the doctor so there was "no indication Dr. Badal actually saw or wrote this." (Id.) Additionally, the ALJ found Dr. Badal was not an acceptable medical source as an "associate marriage and family therapist." (Id.) The ALJ also found the written opinion to be inconsistent

4

with Dr. Badal's own notes and the rest of the evidence. (AT 790-91.) Conversely, the ALJ found "partially persuasive" the opinions of the a state-agency psychologist and a state-agency physician, both of whom found limitations similar to those adopted into the RFC by the ALJ. However, the ALJ assigned greater restrictions in plaintiff's ability to adapt and manage herself, and so rejected those physicians' less-restrictive limitations. (Id.) The ALJ also relied on the opinion of psychologist Dr. Chandler, who performed a consultative mental examination. (AT 792.) The ALJ found Dr. Chandler's opinion "substantially persuasive" and adopted his recommended limitations into the RFC in total. (Id.)

Regarding the medical opinions on plaintiff's physical impairments, the ALJ found "partially persuasive" the opinions of the two state-agency physicians who assigned limitations similar to those adopted in the RFC. (AT 791-92.) However, the ALJ assigned greater restrictions in plaintiff's ability to ambulate, and so rejected those physicians' less-restrictive limitations. (Id.) The ALJ rejected those portions of plaintiff's subjective testimony asserting greater limitations, finding them unsupported by the medical record and inconsistent with plaintiff's daily activities. (AT 787-790.)

Based on the RFC and the VE's testimony, the ALJ found plaintiff unable to perform any past relevant work, but found there were other jobs in the national economy she could have performed, such as a Production Assembler, Small Products Assembler, and Inspector/Hand Packager. (AT 793-94.) Thus, the ALJ found plaintiff not disabled. (Id.) Plaintiff then filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 17, 18.)

**III.   DISCUSSION**

Plaintiff contends the ALJ erred in: (A) resolving the symptom testimony and Dr. Badal's opinion regarding her mental impairments; and (B) resolving the symptom testimony and medical evidence regarding her back impairments. (ECF No. 17.)

The Commissioner contends the decision as a whole is supported by substantial evidence, arguing the ALJ properly: (A) considered Dr. Badal's opinion; and (B) formulated the RFC while rejecting aspects of plaintiff's subjective symptom testimony. (ECF No. 18.)

**Legal Standards – RFC Formulation and the Duty to Develop the Record**

A claimant's residual functional capacity assessment is a determination of what the claimant can still do despite his or her physical, mental and other limitations. See 20 C.F.R. § 404.1545(a). The RFC is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining a claimant's RFC, an ALJ must assess all the evidence (including the descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite the impairment(s). See 20 C.F.R. § 404.1545(a).

Before the ALJ determines claimant is not disabled, the ALJ is responsible for developing claimant's complete medical history, including making every reasonable effort to help claimant get medical reports from claimant's own medical sources. 20 C.F.R. §§ 404.1512(a)(1); 404.1545(a)(3) (stating in general, claimant is "responsible for providing evidence [used] to make a finding about . . . residual functional capacity"). However, it is plaintiff's responsibility to inform the agency about and submit all evidence that relates to whether claimant is disabled. (Id.)

**Legal Standards – Medical Opinions Under the Pre-2017 Regulations**

For claims filed before March 27, 2017, there are three types of medical opinions that can be given: treating, examining, and non-examining; each is accorded different weight. Valentine v. Comm'r, 574 F3d 685, 692 (9th Cir. 2009); 20 C.F.R. § 404.1527. Medical opinions from treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess claimants' problems. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting a treating or examining doctor's opinion. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). "[The ALJ] must set forth [her] own interpretations and explain why they, rather than the doctors, are correct." Embrey, 849 F.2d at 421-22. Broadly speaking, "the ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." Ford, 950 F.3d at 1155.

6

However, only licensed physicians and certain qualified specialists are considered "acceptable medical sources." See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). Treating sources such as nurse practitioners, physician assistants, and social workers are not accepted medical sources and are instead defined as "other sources"—not entitled to the same level of deference as accepted medical sources. See Id.; Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016); Turner v. Comm'r, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The ALJ may discount opinions of an 'other source' by providing "reasons germane to each witness for doing so." Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017).

**Legal Standards – Subjective Symptom Testimony**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: prescription of conservative treatment, inconsistencies between a

claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

**Analysis**

**A. The ALJ properly resolved plaintiff's mental impairments.**

Regarding plaintiff's mental limitations, the ALJ found plaintiff was mildly limited in her ability to understand, remember, or apply information; and moderately limited in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  (AT 783-84.)  The ALJ then assigned the following additional limitations to plaintiff's light work RFC:  simple routine tasks; simple workplace decisions; occasional interaction with supervisors and co-workers, but only brief and superficial interaction with the public; and little change to the setting and routine in the workplace.  (AT 786.)

In so assigning, the ALJ relied on the medical evidence and opinions in the record.  Primarily, the ALJ relied on the opinion of psychologist Dr. Chandler, who examined plaintiff just two months prior to her date last insured.  (AT 435-36.)  Dr. Chandler conducted and recorded an entire 'Mental Status Exam' with objective findings regarding plaintiff's concentration and memory status.  (Id.)  He found that in spite of appearing unkempt, plaintiff had a cooperative attitude, linear thought process, logical content, fair attention, good concentration, adequate knowledge of current events, and adequate memory.  (Id.)  At the end of this evaluation, Dr. Chandler opined that plaintiff had mild impairments in her ability to maintain attention and concentration and to interact with others, and had moderate impairments in her abilities to endure stress and interact with the public, supervisors, and coworkers.  (Id.)  The ALJ gave substantial weight to Dr. Chandler's opinion and adopted these limitations into his RFC.  (AT 792.)  The ALJ also found the opinions of the non-examining state-agency psychologist and physician to be partially persuasive, adopting most of their findings into the RFC but rejecting

their "mild" assignment in plaintiff's ability to adapt or manage oneself (instead opting for greater restrictions in plaintiff's ability to adapt and manage herself).  (AT 791.)  This is substantial evidence supporting the ALJ's conclusions.  20 C.F.R. § 404.1520a(d)(1) (a mental health impairment that causes no or mild limitation generally is not severe); Ford, 950 F.3d at 1154.

Plaintiff contends that in so finding, the ALJ inappropriately discounted Dr. Badal's opinion.  The ALJ summarized this opinion as stating that:

> [Plaintiff] has marked difficulty in concentration and attention to details for an extended period of time  (Exhibit 16F, page 1).  Due to chronic pain and poor sleep, she has "rather lowere (sic) than expected threshold" for stress and withstanding daily stressors.  She is able to understand, remember, and carry out simple one-or-two job instructions, but "due to chronic pain and the resulting agitation and depressive episodes, she has difficulty in following through or completing tasks in meaningful way."  With regard to the ability to deal with the public, "her episodes of increased pain and resulting agitation, she tends to avoid interacting with people."  While she is able to receive and carry out instructions from supervisors, she "tends to over-react to issue or simple criticisms as her stress tolerance level is lower than one would expect from a person with her experience."  With regard to the ability to relate and interact with co-workers, she is "able to do so but tends to over-react to issue or simple criticisms as her stress tolerance level is lower than one would expect from a person with her experience."  She would miss five to six days of work each month due to pain "or the activities that she has to engage in."

(AT 790, citing AT 564-65.)  The ALJ gave little weight to Dr. Badal's opinion because, despite being a treating source, he was deemed not an acceptable medical source.  The ALJ reasoned that, at the time this opinion was authored, Dr. Badal was not a licensed psychologist but served as an "associate marriage and family therapist."  (AT 565, 790.)  Thus, Dr. Badal was at the time an 'other source,' meaning the ALJ only needed to provide germane reasons to discount Dr. Badal's opinion.  See Popa, 872 F.3d at 906.  The court finds the ALJ did so here.

First, the ALJ pointed to fact that the opinion was written 14 months after the date last insured, in present tense, and was not signed by Dr. Badal.  (AT 790.)  Opinions provided after the date last insured may indeed be given less weight on this basis, particularly where such opinions do not appear to concern the earlier period at issue.  See, e.g., Melynda G. v. Kijakazi, 2022 U.S. Dist. LEXIS 57633, at *12 (C.D. Cal. Mar. 29, 2022) (affirming the ALJ's assignment of little weight to a physician's opinion because it was dated more than two years after plaintiff's

date last insured); see also, e.g., Watkins v. Astrue, 357 Fed. App'x 784, 786 (9th Cir. 2009) (affirming rejection of treating physician's opinion offered after claimant's insured status expired where the "questionnaire [was] written in the present tense" and "made no indication" it was retroactive).

Next, the ALJ found inconsistencies between Dr. Badal's opinion and his treatment notes preceding plaintiff's date last insured. Specifically, the ALJ found that Dr. Badal's treatment notes for the relevant time period "do not indicate problems with memory or concentration," and that Dr. Badal believed plaintiff would benefit from anti-depressants. (AT 784; citing e.g. AT 519; AT 790-91.) Plaintiff correctly notes Dr. Badal made a single mention of plaintiff's presentation of 'poor memory' and two mentions of plaintiff being 'disorganized.' (AT 446, 452.) However, given the ALJ's inconsistency finding on Dr. Badal's opinion and discussion of the bulk of the record throughout the decision, the undersigned finds no error in the ALJ's failure to explicitly mention these records. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (reminding that the ALJ does not need to "discuss every piece of evidence"); Molina, 674 F.3d at 1121 (reminding that affirmance should result where the ALJ's reasoning "may reasonably be discerned"). The ALJ properly resolved this conflict in the evidence by relying on the other treating and examining physicians' opinions that were supported by different, independent clinical findings. Tommasetti, 533 F.3d 1035 at 1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence").

Lastly, regarding the assignment of moderate limitations to plaintiff's ability to 'adapt and manage herself,' the ALJ relied on plaintiff's own testimony regarding her activities of daily living. The ALJ recognized plaintiff was able to cook simple meals occasionally, dress and groom herself (although required help at times), maintained some light household chores, helped her younger child with some homework, and drove occasionally. (AT 785.) These activities reasonably align with the RFC limitations, and the ALJ did not err in citing this evidence to reject a more severe restriction in this Paragraph B category. See Tommasetti, 533 F.3d at 1040; Lingenfelter, 504 F.3d at 1040.

///

Plaintiff also argues that if the ALJ doubted Dr. Badal's credentials, authorship and the period discussed at issue, the ALJ should have further developed the record by contacting Dr. Badal. Even accepting this arguendo, any such error would be harmless because the decision clearly does consider the substance of the opinion. See Molina, 674 F.3d at 1115 (error that is inconsequential to the ultimate non-disability determination is harmless).

For these reasons, the undersigned finds no error in the ALJ's resolution of plaintiff's mental impairments.

**B. The ALJ sufficiently considered the evidence regarding plaintiff's back impairment.**

In determining plaintiff's RFC and the extent of her limitations due to her back impairments, the ALJ considered plaintiff's testimony from three different hearings, the medical evidence, and various medical opinions. The ALJ found plaintiff's reported impairments before the date last insured could have reasonably caused the alleged symptoms, but determined her statements regarding intensity, persistence and limiting effects were not entirely consistent with the objective medical evidence, prior statements, and failure to follow treatment. (AT 787.) Upon review, the court finds the ALJ did not err in evaluating plaintiff's back impairment, in resolving plaintiff testimony, and in fashioning an appropriate RFC.

First, the ALJ relied on the objective medical findings to reject the more severe aspects of plaintiff's testimony. The ALJ noted plaintiff's initial complaints on July 8, 2016, which consisted of ten-day history of leg pain. (Id., citing AT 369.) During a hospital visit, plaintiff was noted to be in no acute distress but had a tender leg with normal range of motion in her joints and a normal gait, sensation, and strength. (Id., citing AT 364-65.) Plaintiff was taken off work until July 25, 2016, and was referred to an orthopedist. (Id.) An MRI ordered by plaintiff's orthopedist Dr. Konkin reflected a disc herniation at L5 to S1 with impact on her nerve roots. (Id., citing AT 379-80.) Despite this MRI, plaintiff was recommended conservative care, and she continued to have examinations with various providers showing normal gait, full range of motion, good strength, normal reflexes of the extremities, mild straight leg test on the left, and no motor or sensory deficits. (AT 787-90, citing AT 377, 379-80, 382, 385, 388, 391, 422-27, 484-85, 512-13, and 1269.) The ALJ also noted that in spite of reports of high levels of pain, plaintiff often

presented to medical visits with no acute distress. (AR 790; citing, e.g., AT 377, 392, 432, and 1270.) This medical evidence assisted the ALJ in determining plaintiff's back impairment did not interfere with her ability to perform certain jobs in the national economy. The ALJ's approach here was not error, as a reliance on the medical evidence to discount a plaintiff's testimony is appropriate when paired with other factors. Rollins, 261 F.3d at 857 (reminding when objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may weight it as undercutting such testimony).

The ALJ also relied on plaintiff's failure to follow treatment plans, highlighting instances where plaintiff: (i) was discharged from physical therapy because she stopped showing up and answering calls (AT 788; citing, e.g., AT 386); (ii) failed to return to a consultative physician for a prescribed epidural injection (AT 789; citing, e.g., AT 388, 1271); (iii) did not follow the recommended treatment plan of Dr. Tabaree (AT 788-790). Dr. Tabaree treated plaintiff in 2017, and the ALJ noted the doctor's assessment that plaintiff's "pain patterns did not correlate to her images completely." (AT 789-90; citing, e.g., AT 485.) The ALJ also noted Dr. Tabaree's decision to opt plaintiff out of disability for broad nondermatomal pain patterns and observation that conservative measures for treatment of plaintiff's pain had not been maximized. (789-90, citing, e.g., AT 484-485 (wherein Dr. Tabaree reiterated the importance of attempting more conservative treatments prior to applying for benefits).) The ALJ properly relied on such evidence to discount plaintiff's testimony. See Molina, 674 F.3d at 1113-14 ("In assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]") (cleaned up).

Finally, the ALJ noted plaintiff's inconsistent statements as a reason to discount her allegations that she had pain <u>all over her body</u> prior to the date last insured. (AT 787.) The ALJ found "no mention . . . of any such complaints in the medical record prior to date last insured," citing to treatment notes where her complaints were limited to back and leg pain only. (AT 787-88; citing AT 276, 385, 422-23, 426, 512-13, 1270.) This was proper. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements).

Plaintiff argues that in so finding, the ALJ was selectively relying on evidence that tended to support the decision while simply disregarding the evidence that does not support those findings. First, plaintiff notes the ALJ failed to mention that "Dr. Konkin was plaintiff's treating orthopedist and Dr. Tabaraee was her treating orthopedic surgeon." Next, plaintiff contends the ALJ omitted these physicians' findings of "very significant pathology at L5-S1," "intervertebral lumbar disc disorder with radiculopathy," and "myofascial pain syndrome." Plaintiff also contends that though the ALJ relied on Dr. Tabaree's observation that plaintiff's pain did not correlate to the imaging, the ALJ failed to "delve into what [this] meant." Lastly, plaintiff points to some physical therapy treatment notes, arguing that they showed a more comprehensive physical examination of plaintiff's back limitations that ALJ ignored. (ECF 17 at 18-19.)

It is true that the ALJ's may not selectively cite to portions of the record when resolving a plaintiff's disability claims. See Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) ("ALJ selectively relied on some entries [in the plaintiff's treatment records] and ignored the many others that indicated continued, severe impairment."). However, this principle is often in balance with another: that "an ALJ need not discuss all evidence presented to [them]." Kilpatrick v. Kijakazi, 35 F.4th 1187, 1193 (9th Cir. 2022). The court interprets this balance to mean that where an ALJ provides "sufficient reasoning [allowing for] review," Lambert, 980 F.3d at 1277, including a discussion of most evidence probative of the plaintiff's claim, Luther, 891 F.3d at 875, and this reasoning "may reasonably be discerned," Molina, 674 F.3d at 1121, the court's conclusion will be that the decision must be upheld as "susceptible to more than one rational interpretation, Ford, 950 F.3d at 1154. See also Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("[A] reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion"). However, if the ALJ appears to be ignoring key segments of plaintiff's evidence regarding a particular condition, in order to arrive at a predetermined outcome, the court will consider this to be inappropriate cherry-picking and order a reversal for further proceedings.[2] Holohan, 246 F.3d at 1207.

---

[2] The court admits that where this line falls is not always clear, and so the undersigned will continue to resolve alleged cherry-picking issues on a case-by-case basis.

Here, the court finds the ALJ's decision does not evince inappropriate cherry picking. The ALJ's failure to mention the doctors' treatment relationship is inapposite to the resolution of plaintiff's case. The ALJ examined the records generated by these professionals, and it is implicit in the decision that the ALJ found these sources to be appropriate medical sources. Treichler 775 F.3d at 1099 ("An error is harmless if it is inconsequential to the ultimate nondisability determination or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (cleaned up).

As to plaintiff's remaining contentions (failing to mention certain medical and PT records, and failing to "delve into" Dr. Tabaree's observation about pain-to-imaging correlation), the court finds no error here. The ALJ took account of the records regarding plaintiff's L5-S1 and DDD, but noted Dr. Konkin's and Dr. Tabaree's recommendations of conservative measures to treat these conditions. (AT 788.) Regarding physical therapy notes, they were evaluated by Dr. Fast, a non-examining State Agency physician. (AT 791.) The ALJ assigned greater restrictions, than those assigned by the state agency physicians, which would adequately account for the limited range of motion noted by PT and for the additional diagnoses noted in Dr. Tabaree's notes, as well as Dr. Olegario-Nebel's notes, which were done four months after date last insured. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520 (reminding that in order to obtain disability benefits, a claimant must demonstrate that she is disabled prior to her last insured date). Thus, at best, plaintiff's arguments here highlight ambiguous evidence that was susceptible to more than one interpretation. See Tommasetti, 533 F.3d at 1041-42 (reminding plaintiff, "where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

For these reasons, the undersigned finds no error in the ALJ's resolution of plaintiff's physical impairments.

V.  **CONCLUSION**

Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by

14

substantial evidence.")  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED;
2. The Commissioner's cross-motion (ECF No. 18) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court is directed to CLOSE this case.

Dated:  September 26, 2023

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

SD/AZ,tamo.1393